IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

Alyson Tomljenovic, Esquire
COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM
A Professional Association
1125 Atlantic Avenue - Third Floor
Atlantic City, NJ 08401
(609) 344-3161
File No. 56337.00018
Attorneys for Defendants, DGMB Casino, LLC; Gomes Gaming, Inc. d/b/a Resorts Casino Hotel and Dennis Gomes

| | |
|---|---|
| DAMIAN MELTON,<br><br>    Plaintiff<br>v.<br><br>RESORTS INTERNATIONAL HOTEL, INC.;<br>DGMB CASINO, LLC d/b/a RESORTS;<br>GOMES GAMING, INC; and DENNIS<br>GOMES,<br><br>    Defendants. | Civil Action No. 1:11-cv-06449-RMB/KMW |

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................. ii

**INTRODUCTION** ............................................................................................................ 1

**FACTUAL BACKGROUND** ......................................................................................... 2

**ANALYSIS** ....................................................................................................................... 7

    A.    **Summary Judgment is Proper** ........................................................................... 7

    B.    **DGMB Has Not Interfered with Plaintiff's FMLA Rights** .............................. 8

    C.    **DGMB Has Not Retaliated Against Plaintiff in violation of the FMLA** ....... 10

    D.    **DGMB Has Not Discriminated Against Plaintiff** ........................................... 12

    E.    **DGMB Did Not Fail to Accommodate Plaintiff** ............................................ 14

    F.    **DGMB Has Not Retaliated Against Plaintiff in violation of the NJLAD** .... 14

    G.    **DGMB Did Not Violate Plaintiff's Rights by Opting to Hire Others** ........... 14

**CONCLUSION** .............................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**
Bergen Commercial Bank v. Sisler, 157 N.J. 188 (1999) .................................................. 12,15
Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520 (1995) ............................... 7
Duncan v. Verizon, 2011 N.J. Super. Unpub. LEXIS 1839 (App.Div. July 11, 2011) ........... 11
Jason v. Showboat Hotel & Casino, 329 N.J. Super. 295, 304-305 (App.Div. 2000) ............ 13
Jezek v. Medco Health Solutions, Inc., 2012 U.S. Dist. LEXIS 8182 (D.N.J. Jan. 24, 2012) ... 7, 9
Lefevor v. K.P. Hovnanian Enterprises, Inc., 160 N.J. 307, 310 (1999) ............................... 8
Liebeskind v. Colgate-Palmolive Co., 2010 N.J. Super. Unpub. LEXIS 1282 (App.Div. June 11, 2010) .................................................................................................................. *passim*
Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55 (App. Div. 2004) ............................ 7
Martin v. Rutgers Cas. Ins. Co., 346 N.J. Super. 320, 323 (App. Div. 2002) ....................... 7
Oticon, Inc. v. Sebotek Hearing Sys., LLC, 865 F. Supp. 2d 501 (D.N.J. 2011) .................... 8
Viscik v. Fowler Equip. Co. Inc., 173 N.J. 1 (2002) ........................................................... 15
Young v. Hobart West Group, 385 N.J. Super. 448, 465, 897 A.2d 1063 (App. Div. 2005) .... 11

**Statutes**
29 CFR 825.104 ............................................................................................................... 8
N.J.S.A. 10:5-12(d) ......................................................................................................... 11

**Rules**
F.R.C.P. 56(c). ................................................................................................................. 7

## INTRODUCTION

This matter comes before the Court on Defendants DGMB Casino, LLC, Gomes Gaming, Inc. d/b/a Resorts Casino Hotel and Dennis Gomes' Motion for Summary Judgment (hereinafter collectively "DGMB"). Plaintiff's Amended Complaint claims several violations of the Family Medical Leave Act ("FMLA") and the New Jersey Law Against Discrimination ("NJLAD"). These cannot be maintained against DGMB, as they cannot be considered Plaintiff's "employer" for the purposes of maintaining the same. Plaintiff was terminated by his former employer, with proper notice. DGMB acquired the property in an Asset-only purchase Agreement with a third-party. They never hired Plaintiff.

Plaintiff also alleges that he was not hired by DGMB because he had taken leave under the Family Medical and Leave Act and/or because he has diabetes. Plaintiff has provided no evidence of the same except mere speculation, which he apparently invented after he was laid off by his actual employer with proper notice, co-defendant Resorts International Hotel, Inc. Plaintiff also tries simply, and not in accordance with the law, to group DGMB with Resorts International Hotel, Inc. pretending they are one entity, quietly omitting the actual previous owner and seller of the property. This is logically and legally inaccurate.

As Plaintiff cannot demonstrate that DGMB should be considered his employer for the majority of these claims, nor can he provide evidence that his alleged medical needs and/or his FMLA leave was considered by those at DGMB evaluating applicants, his Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

Plaintiff was doorman and former employee of Resorts International Hotel, Inc. ("RIHI"), which defaulted on a $360,000,000 Credit Facility in November 2008, due to well-publicized financial failures attributed to competition coming from both inside and out of Atlantic City. During his tenure at the property, then branded Resorts Atlantic City ("Resorts AC"), Plaintiff had applied for and was granted intermittent leave for his diabetes. He was never disciplined for calling out or being late. He was never given a hard time for taking extra breaks.

In December 2009, RIHI decided to simply give the property back to its lender, Wells Fargo Bank. RIHI entered into a Settlement Agreement ("Deed-In-Lieu of Foreclosure"), pursuant to which the property was transferred to RAC Atlantic City Holdings, LLC ("RAC"), a Delaware Limited Liability Company that had been formed by Wells. RAC was then the owner of the property, but they did not have the proper license from the New Jersey Casino Control Commission to operate the facility. As RIHI still maintained the required license which allowed them to operate the hotel-casino, they entered into a management agreement with RAC to run the property. At all times, RIHI was Plaintiff's employer.

The following year, on or about August 17, 2010, DGMB Casino, LLC ("DGMB"), through Gomes Gaming, Inc., entered into an Asset Purchase Agreement ("APA"). Under the terms of the APA, DGMB acquired only the assets of Resorts AC and none of the liabilities unless it otherwise specifically agreed to.

The next month all employees of RIHI at Resorts AC, including Plaintiff, received a Warn Notice advising that DGMB would be "acquiring the assets of Resorts." It further advised that DGMB would consider itself to be a new employer for all individuals it hires. They were seeking "to hire, for each open position within its organization, the best qualified applicants." Plaintiff also received the Notification Form Under the Millville Dallas Airmotive Plant Job Loss

Notification Act, which advised that as of December 1, 2010 there would be a termination of operations of RIHI. They were further informed that the termination of employment of the 2022 employees would occur on the same date, as a result of the termination of operations from the sale of the property. No employment was being offered to the terminated employees at any other establishment operated by the employer.

In the following weeks, RIHI employees, including managers, were advised that they needed to apply for positions with DGMB. All employees, including all of those up the chain of command were being terminated and had to apply and interview for positions with DGMB. DGMB employees began interviewing directors, supervisors and managers. After which, supervisors and managers interviewed staff. To ensure a fair and impartial hiring process, DGMB Managers who had previously worked for RIHI were not permitted to interview RIHI employees who they had directly supervised in the past. They did not have access to any employment files of the employees at that time. Any personal information regarding a medical condition would not even be included in such a file. An applicant's prior use of leave, medical condition or any other protected classification discussed or considered during the interview or hiring process. Those interviewing candidates were told DGMB was seeking to hire energetic, hard-working individuals who were willing to think "out-of-the-box." Any hiring decision were subject to the final approval of DGMB personnel.

Plaintiff testified that while he employed as a doorperson by RIHI, he had requested intermittent leave under the Family Medical Leave Act ("FMLA") for his diabetes every year he was eligible, so he could take days off if necessary. He also believed this allowed him to take additional breaks and to come in late, as well. Plaintiff testified was never denied FMLA leave. Plaintiff testified never received any discipline for calling out or being late nor was he given a hard time for taking extra breaks. Plaintiff was out of work from August through around

3

November 2010 due to surgery on his shoulder and subsequent treatment. After his return, he worked as a valet cashier.

Plaintiff applied online for various positions, including doorperson and valet attendant. DGMB planned to reinvent the property in order to make it a success again. This involved massive restructuring and, in some cases, elimination of departments and positions. RIHI's Parking Department, formerly included doorpersons, valet attendants and valet cashiers. DGMB outsourced that department, with the exception of the doorpersons, to an Independent Contractor, Indigo Transportation. After DGMB began operating the property, the doorpersons would be part of the Front Desk Services department, along with the bellmen and other Front Desk personnel, supervised by Manager Dayle Fabrizio.

DGMB received over 1500 job applications for approximately five or six doorperson positions and about eight bellman positions. Plaintiff received an interview for the position of door person with Kyle (Richards), a supervisor of the Front Desk, with whom he had had little to no prior contact. Plaintiff did not recall discussing either his diabetes or his FMLA leave with Mr. Richards. Nor did Plaintiff have any such discussions with Dayle Fabrizio about his diabetes or taking FMLA leave.

Paul McCarthy was employed by RIHI from July 2010 until December 2010, as the Manager of both the Environmental Services ("EVS") Department, which involves housekeeping and other services, as well as the Parking Department, which included the doorpersons, valets and cashiers. He oversaw approximately 160 employees, including Plaintiff. Mr. McCarthy suffers from a disability. He also applied for various positions with DGMB, and received an interview with a representative of DGMB. He was hired as an Assistant Manager of EVS by DGMB.

4

He testified that he never had any discussions with anyone about whether or not Plaintiff should be hired. He also testified that it was "Ridiculous" to believe that someone's disability would be considered in the hiring process. He said that whether an applicant had taken FMLA leave was also not a consideration in the hiring process. According to Mr. McCarthy, at least 80% of the RIHI's EVS department employees had taken FMLA at some point. As most were hired by DGMB, this supported his statement.

Plaintiff was not hired by DGMB. The six doorpersons hired were Alfred Smith, Eddie Figueroa, Chonte Gaskins, George Galownia, Thomas Rzemyk and John Teal. Alfred Smith, Eddie Figueroa, Chonte Gaskins, and Thomas Rzemyk were working as doorpersons in December of 2010 when they were laid off by RIHI. At the time that DGMB hired them, Mr. Smith and Mr. Figueroa had worked as doormen for the property since 1983. Ms. Gaskins worked at the property in the Parking Department since 1993, Mr. Rzemyk since 2000 and Mr. Galownia since March 2004. The only person hired as a doorperson from outside the property was John Teal, who had significantly more experience than Plaintiff, as he worked as a doorperson for 13 years, prior to working as a bellperson for an additional two. All of those hired had more experience either on the property or as a doorperson than Plaintiff.

Mr. McCarthy described Plaintiff as a "barely average employee." Regardless, Plaintiff was subsequently hired by Indigo Transportation as a valet attendant at the property. He was subsequently terminated prior to the end of his probationary period.

Plaintiff is now attempting to sue DGMB because he was laid off and not selected to be part of the new team at the new Resorts Casino Hotel. He claims he was qualified and, as such, simply should have been hired. However, "barely average" is not what DGMB was seeking in new employees. More likely, it is what helped to drive the old Resorts Atlantic City into

financial dire straits. DGMB needed those who had the experience and the enthusiasm to revive the property and "barely average" was not going to cut it.

Regardless, Plaintiff cannot show that DGMB should be considered his employer for the majority of the claims in his complaint, given the fact that they did not even purchase the property from his employer. They also entered into an Asset-only Purchase Agreement which explicitly limited their liability regarding any claims that may have a arisen prior to their taking control of the property on December 7, 2010. Moreover, Plaintiff was advised that they would consider him a new employee if he was hired; therefore, he would not have even been entitled to take FMLA leave if he received the position.

2022 people were laid off as of December 6, 2010. In the approximately eight weeks before, representatives of Gomes Gaming, reviewed applications, interviewed applicants, restructured and eliminated departments and positions. A massive undertaking for such a short window of time. Plaintiff would like this Court to believe that during this time those he had worked with in the Parking Department at RIHI, who had never given him any problems regarding his leave, his lateness or his extra breaks during his tenure there, in the midst of this transition conspired to keep him from a position with DGMB because of his medical condition and/or his FMLA leave. However, he has no proof of the same. Moreover, DGMB has proffered evidence that those making the decisions were not aware of his condition. Also, DGMB hired those who had taken leave in the past and those that had disabilities.

As Plaintiff has failed to proffer sufficient evidence to maintain his claims against DGMB, they respectfully request that this Court dismiss all of Plaintiff's claims against DGMB Casino, LLC; Gomes Gaming, Inc. d/b/a Resorts Casino Hotel and Dennis Gomes.

## ANALYSIS

### A. SUMMARY JUDGMENT STANDARD.

> Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Disputes over irrelevant or unnecessary facts will not preclude granting summary judgment.

Jezek v. Medco Health Solutions, Inc., 2012 U.S. Dist. LEXIS 8182 (D.N.J. Jan. 24, 2012) (citing Fed. R. Civ. P. 56(a)).

The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 540 (1995) (citation omitted). In further articulating this standard, the Court stated:

> We live in what is widely perceived as a time of great increase in litigation and one in which many meritless cases are filed, vastly increasing the dockets before our trial judges. As a result, the courts of this country have been urged to liberalize the standards so as to permit summary judgment in a larger number of cases.

Id. at 539 (citations omitted). Thus, "if there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2. . . . [W]hen the evidence 'is so one-sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgment." Mandel v. UBS/PaineWebber, Inc., 373 N.J. Super. 55, 71 (App. Div. 2004) (quoting Brill, 142 N.J. at 540), cert. denied, 183 N.J. 213, 183 N.J. 214 (2004). Further, when a "record is barren of any evidence . . . other than [Plaintiff's] own self-serving assertion," it is "clearly insufficient to create a question of material fact" necessary to defeat a motion for summary judgment. Martin v. Rutgers Cas. Ins. Co., 346 N.J. Super. 320, 323 (App. Div. 2002).

Such a situation is presented here and, therefore, DGMB respectfully submits summary judgment should be entered in its favor. As discussed more fully below, Plaintiff cannot succeed upon his claims against DGMB as he has no evidence that he was employed by them or that the reason he was not selected for a doorperson position had anything to do with his diabetes or his FMLA leave. Plaintiff's baseless, self-serving accusations are not enough to defeat a motion for summary judgment.

### B. COUNT I: PLAINTIFF HAS FAILED TO PRESENT SUFFICIENT EVIDENCE THAT DGMB INTERFERED WITH HIS FMLA RIGHTS.

It appears Plaintiff is trying to assert that DGMB interfered with Plaintiff's FMLA rights by "not continuing his employment" to prevent him from taking further FMLA leave. Plaintiff would clearly like for the Court to pretend for the purposes of his Complaint that RIHI and DGMB are the same entity; however, they are not. DGMB did not terminate Plaintiff. RIHI terminated him and did it in accordance with the law, providing proper notice of the situation in the appropriate amount of time. Plaintiff was never employed by DGMB. He cannot bring claims under the FMLA against DGMB because he cannot show they meet the definition of "employer" under the same. 29 CFR 825.104. Moreover, he has failed to present any evidence to suggest there was an interrelationship between DGMB and his prior employer, RIHI.

A purchaser is not liable for the debts and liabilities of a seller because it has succeeded to the ownership of the assets of the same under general rule of corporate-successor liability. Oticon, Inc. v. Sebotek Hearing Sys., LLC, 865 F. Supp. 2d 501, 2011 U.S. Dist. LEXIS 93219 (D.N.J. 2011) (citing Lefevor v. K.P. Hovnanian Enterprises, Inc., 160 N.J. 307, 310 (1999)). However successor liability may be applied if "(1) the successor expressly or impliedly assumes the predecessor's liabilities; (2) there is actual or de facto consolidation or merger of the seller

8

and the purchaser; (3) the purchaser is a mere continuation of the seller; or (4) the transaction is entered into fraudulently to escape liability."

None of the above apply. DGMB purchased the property from RAC, not Plaintiff's employer, RIHI, who had forfeited the same a year earlier. In that Asset-only Purchase, DGMB expressly did not assume any of the liabilities of the seller or RIHI. Moreover, DGMB, created by Dennis Gomes and his partner Morris Bailey, did not merely continue the hotel and casino which RIHI had failed to make successful. They purchased the failed property to restructure and redesign, to restore the first casino in Atlantic City to its former glory. Neither RAC nor RIHI played any role in this or had any connection to the entity after the sale. Gomes Gaming brought in their own managing staff, conducted interviews, reorganized and, in some cases, outsourced or eliminated departments, created and cut the number of positions at the property significantly, just to name a few of the internal changes that were happening. Lastly, under the facts of this case, Plaintiff cannot present any evidence that the APA was entered into to escape liability.

Even assuming arguendo that Plaintiff could demonstrate that that DGMB should be considered his employer for the sake of this action, he cannot present evidence that DGMB, or even RIHI, interfered with his rights under the FMLA. Plaintiff must show that "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." Jezek v. Medco Health Solutions, Inc., 2012 U.S. Dist. LEXIS 8182 *14-15 (D.N.J. Jan. 24, 2012).

While employed by RIHI, Plaintiff took FMLA leave continuously since 2006, at least. By his own testimony, during those four years, he was never disciplined for calling out or being late. He was never chastised for taking extra breaks when he felt they were necessary. None of his supervisors, managers or co-workers in the parking department interfered with his right to take FMLA leave or to attend to his alleged medical needs.

9

As a doorman employed with DGMB, he would have been working within a new department. As such, he was interviewed by a supervisor with whom he had never worked. He never told that supervisor, nor the manager of that department, about his diabetes or leave under the FMLA, nor did he request any accommodation from them. If Plaintiff never made such requests, he cannot now claim the same was a substantial factor or played any role in him not getting the position. Moreover, with regard to leave, DGMB would have been a new employer and new employees would not have been entitled to take FMLA leave until after twelve months of employment.

Those that were hired by DGMB and aiding in the interviewing and hiring process in which an entire hotel and casino was staffed in approximately eight weeks, all stated that neither FMLA leave nor disabilities of any kind were ever discussed as considerations. DGMB wanted "energetic, hard-working individuals who were willing to think 'out-of-the-box.'" After receiving over 1500 applications for fourteen positions, including the six doorperson positions, DGMB hired six individuals who all had more experience than Plaintiff, either as a doorperson or at the property itself.

Moreover, Plaintiff hired many people who had taken FMLA leave and even, at least one, who was actually on FMLA leave when she was interviewed. They also hired people suffering from disabilities. Plaintiff has not presented any evidence to demonstrate that DGMB was his employer for the purposes of this claim. Nor has he shown that DGMB violated his rights under the FMLA.

    C.    **COUNT II: PLAINTIFF HAS FAILED TO PRESENT SUFFICIENT EVIDENCE THAT DGMB RETALIATED AGAINST PLAINTIFF.**

Plaintiff alleges in this Count that DGMB retaliated against him by "not continuing his employment/ refusing to hire him for having taken FMLA-qualifying leave." "Pursuant to

N.J.S.A. 10:5-12(d), it is unlawful to 'take reprisals against any person because that person has opposed any practices or acts forbidden [pursuant to the New Jersey Law Against Discrimination ("NJLAD")].'" Duncan v. Verizon, 2011 N.J. Super. Unpub. LEXIS 1839 at *14 (App.Div. July 11, 2011). To establish a prima facie retaliation claim under the NJLAD, Plaintiff must show that "(1) that he engaged in protected activity; (2) the activity was known to the employer; (3) Plaintiff suffered an adverse employment decision; and (4) there existed a causal link between the protected activity and the adverse employment action." Id. at *14-15 (citing Young v. Hobart West Group, 385 N.J. Super. 448, 465, 897 A.2d 1063 (App. Div. 2005). However, once again, only employees are entitled to pursue an action under the NJLAD. Liebeskind v. Colgate-Palmolive Co., 2010 N.J. Super. Unpub. LEXIS 1282, *5 (App.Div. June 11, 2010). Plaintiff was never an employee of DGMB; therefore, he cannot maintain a claim of retaliation against them.

Even if for the purposes of this motion one makes the assumption that he could demonstrate DGMB was his employer, Plaintiff, as explained above, cannot demonstrate there was a causal link between his FMLA leave and his failure to get a position with DGMB. He took leave without discipline or incident for four years while employed with RIHI. Even if Plaintiff claims that there was some clandestine, yet apparently inept, conspiracy against him within the Parking Department during that time, under DGMB that department was outsourced and essentially abolished. Moreover, DGMB took steps to eliminate any possible bias for or against any applicants formerly employed with RIHI by having them interviewed by supervisors with whom they had never worked. All decisions were subject to approval by DGMB personnel.

Plaintiff testified he never discussed his FMLA leave with the supervisor who interviewed him or the manager of this new department. Moreover, DGMB can show that they hired people who had apparently taken leave in the past and/or were actually on FMLA leave at

11

the time they interviewed for a position with DGMB. As Plaintiff cannot provide evidence that he was not hired by DGMB as some sort of retaliation for taking FMLA leave, leave which he would not even be entitled to as a new employee with DGMB, this Court should dismiss this claim against them.

### D. COUNT III: PLAINTIFF HAS FAILED TO PRESENT SUFFICIENT EVIDENCE THAT DGMB DISCRIMINATED AGAINST HIM.

Plaintiff claims that DGMB violated the New Jersey Law Against Discrimination ("NJLAD") by again not "continuing" his employment. For those reasons discussed in the previous sections, Plaintiff's claims of disability discrimination fail as well. Initially, once again, only employees are entitled to pursue an action under the NJLAD. Liebeskind, supra, at *5. Plaintiff was never an employee of DGMB; therefore, he cannot maintain a claim of discrimination against them. However, even if one assumes he was employed by DGMB, he still cannot demonstrate that he suffered any discrimination by them.

Under NJLAD, Plaintiff may meet his burden by one of two ways. First, Plaintiff must present "direct evidence that decision makers placed substantial negative reliance on an illegitimate criterion." Bergen Commercial Bank v. Sisler, 157 N.J. 188, 208 (1999). "The evidence produced must, if true, demonstrate not only a hostility toward members of the employees class, but also a direct causal connection between that hostility and the challenged employment decision." Ibid.

Alternatively, Plaintiff must present indirect evidence of discrimination that satisfies the familiar three-step burden shifting framework identified in McDonnell Douglas. The first step requires a plaintiff to show: (1) he belongs to a protected class; (2) there was a company policy or practice concerning the activity for which he was disciplined; (3) non-protected members either were given the benefit of a lenient company practice or were not held to be compliant with

12

a strict company policy; and (4) he was disciplined either without application of a lenient policy or in conformity with the strict policy. See Jason v. Showboat Hotel & Casino, 329 N.J. Super. 295, 304-305 (App.Div. 2000). In order to rebut that presumption, the second step requires an employer to come forward with admissible evidence of a legitimate, non-discriminatory reason for its action. Ibid. If an employer produces such evidence, the employee must establish that the legitimate, non-discriminatory reason was merely a pretext for discrimination. Ibid.

In the present matter, Plaintiff cannot proffer sufficient proof to maintain a claim for disability discrimination under either method. In applying the first method, Plaintiff fails to provide evidence that DGMB placed any reliance on the fact that he had diabetes when they determined who they would hire as doorpersons, as he did not advise his prospective supervisors, managers or members of Gomes Gaming that he had diabetes. He further fails to demonstrate any hostility towards member of his class, as Paul McCarthy, another employee from RIHI who suffers from a disability, was hired by DGMB.

Under the second method, Plaintiff also fails to proffer any proof that he was treated differently than any of the other hundreds of people who applied for his positions. In fact, he was most likely treated better simply because he had been previously employed at the property, as he was given the opportunity of an interview. In the end, within approximately eight weeks, Gomes Gaming managed to staff an entire hotel and casino. Those selected for the doorperson positions, as previously stated, all had more experience as a doorperson or at the property than Plaintiff. Also as stated above, those hired by Gomes Gaming to conduct interviews certified and testified that disabilities were never discussed as criteria to consider in selecting applicants. Paul McCarthy, who is himself disabled, called the allegation "Ridiculous."

Plaintiff's self-absorbed, narcissistic attitude in alleging that during this period of upheaval and fast-paced restructuring and change, DGMB personnel were sitting around

13

discussing his diabetes or plotting against him is "Ridiculous." As Plaintiff has failed to substantiate a claim for discrimination based on disability the same should be dismissed with prejudice.

### E. COUNT IV: PLAINTIFF HAS FAILED TO PRESENT SUFFICIENT EVIDENCE THAT DGMB FAILED TO ACCOMMODATE HIM.

Plaintiff alleges within this Count that DGMB violated the NJLAD by failing to accommodate him by allowing him leaves. Initially, once again, only employees are entitled to pursue an action under the NJLAD. Liebeskind, supra, at *5. Plaintiff was never an employee of DGMB; therefore, he cannot maintain a claim of discrimination against them.

Moreover, Plaintiff testified that he never requested any accommodation with DGMB personnel. As he never requested an accommodation and never engaged in a discussion regarding the same with the DGMB personnel or Human Resources Department, Plaintiff cannot maintain this claim against DGMB.

### F. COUNT V: PLAINTIFF HAS FAILED TO PRESENT SUFFICIENT EVIDENCE THAT DGMB RETALIATED AGAINST PLAINTIFF FOR REQUESTING OR ACCEPTING A REASONABLE ACCOMODATION.

Plaintiff alleges that DGMB did not "continue his employment because he requested" accommodations in the form of intermittent time off from work due to his diabetes in violation of the NJLAD. Plaintiff was never an employee of DGMB. Plaintiff never requested any accommodation from DGMB. Thus, Plaintiff cannot maintain this claim against DGMB.

### G. COUNT VI: PLAINTIFF HAS FAILED TO PRESENT SUFFICIENT EVIDENCE DGMB FAILED TO HIRE PLAINTIFF EITHER BECAUSE OF HIS DIABETES OR HIS FMLA LEAVE.

Plaintiff alleges that DGMB did not hire him because of his disability. To properly analyze this claim, the element of a discrimination claim under the NJLAD must be fitted to the

situation. See e.g., <u>Viscik v. Fowler Equip. Co. Inc.</u>, 173 N.J. 1 (2002) (holding that "[t]he precise element of a prima facie case must be tailored to the particular circumstances"). Here, the following test is more closely aligned to the claim:

Plaintiff must establish, by a preponderance of the evidence, that "(1) he belongs to a protected class; (2) applied for and was qualified for a position for which the employer was seeking applicants; (3) was rejected despite adequate qualifications; and (4) after the rejection, the position remained open and the employer continued to seek applications for persons of plaintiff's qualifications." <u>Bergen Commercial Bank v. Sisler</u>, 157 N.J. 188 (1999) (internal citations omitted).

Here, Plaintiff cannot establish that he was qualified for the position. Plaintiff was described as a "barely average" employee. By his own admission, during November he was not even working as doorperson, but rather as a valet cashier without a bank, just sitting on a stool doing nothing, but apparently gossiping. DGMB was looking to reinvent the property and they needed enthusiastic and hard-working go-getters, who were going to provide incredible customer service. Additionally, Plaintiff had less experience in some way than those hired.

Moreover, Plaintiff cannot establish even the most minimal of causal evidence that the decisions makers with respect to the DGMB knew of his alleged disability or his leave. Logically, DGMB cannot discriminate against Plaintiff for reasons it is unfamiliar with. Therefore, Plaintiff's failure to hire claim should be dismissed.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant DGMB's Motion for Summary Judgment, dismissing the Complaint of Plaintiff against Defendants, DGMB Casino, LLC; Gomes Gaming, Inc. d/b/a Resorts Casino Hotel and Dennis Gomes with prejudice.

Respectfully submitted,
COOPER LEVENSON APRIL
NIEDELMAN & WAGENHEIM, P.A.

By:/s/Alyson M. Tomljenovic
Alyson M. Tomljenovic

DATED: September 20, 2013

CLAC 2273234.1